**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **THE HILB GROUP OF NEW JERSEY, LLC,**<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>**MUNYARADZI MUSUKA,** *et al.***,**<br><br>　　　　　　　　　　Defendant. | Civil Action No. 23-1246 (ZNQ) (RLS)<br><br>OPINION |

**QURAISHI, District Judge**

This matter comes before the Court upon the Motion to Dismiss the Amended Complaint (the "Motion," ECF No. 37) filed by Defendants Munyaradzi Musuka and Musuka Group, LLC (collectively, "Defendants"). In support of their Motion, Defendants filed a brief ("Moving Br.," ECF No. 37-3) and the Declaration of Michael R. DiChiara ("DiChiara Decl.," ECF No. 37-1). Plaintiff The Hilb Group of New Jersey, LLC ("THG-NJ" or "Plaintiff") filed an opposition ("Opp'n Br.," ECF No. 40), to which Defendants replied ("Reply Br.," ECF No. 41). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons outlined below, the Court will DENY Defendants' Motion to Dismiss.

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

1

I. **BACKGROUND**

　　A. **Procedural Background**

Plaintiff filed a Complaint in the New Jersey Superior Court asserting various claims against Musuka based on his employment with Plaintiff and his formation of Musuka Group, LLC ("Musuka Group"). On March 3, 2023, Musuka removed the case to this Court on diversity jurisdiction grounds. (ECF No. 1.) Plaintiff then filed an amended, verified complaint against Musuka and Musuka Group ("FAC," ECF No. 5), alleging breach of contract against Musuka (Count I), tortious interference with contractual relations or prospective economic advantage against both Defendants (Count II), unjust enrichment against both Defendants (Count III), breach of the duty of loyalty against Musuka (Count IV), and another claim for tortious interference with contractual relations, just against Musuka Group (Count V). On March 17, 2023, Plaintiff filed a Motion for Preliminary Injunction and Expedited Discovery. (ECF No. 7.) The parties later consented to a preliminary injunction. (ECF No. 25.) On August 11, 2023, Defendants filed the instant Motion to Dismiss the FAC. (ECF No. 37.)

　　B. **Factual Background**[2]

Around September 2008, Musuka began working for E.B. Cohen & Associates Assurance Agency, LLC ("Cohen"), an insurance brokerage company. (FAC ¶ 6.) Plaintiff purchased Cohen's assets, including Cohen's client accounts and relationships "and all associated goodwill, confidential information, files, claim files, books, records, ledgers, correspondence, and other records"[3] in February 2022. (*Id.* ¶ 24; *see also id* ¶¶ 6, 22.) At that time, Musuka was Cohen's Vice President. (*Id.* ¶ 23.) He managed existing client relationships, developed new ones,

---

[2] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).
[3] The Complaint adds that the insurance brokerage and consulting business is "extremely competitive," and so Plaintiff has invested significant resources, time, and money to develop both its client relationships and confidential information about its clients such as "risk tolerances, historical insurance coverage and needs, policy information and other information." (FAC ¶¶ 18–19.)

2

supervised two associates in client service, and served as the "face" of THG-NJ for many of its client relationships. (*Id.* ¶¶ 23, 29.) Upon Plaintiff's acquisition of Cohen, Musuka became an employee of Plaintiff, but kept his same job responsibilities. (*Id.* ¶¶ 27–28.) He executed a Confidentiality and Non-Solicitation Agreement (the "Agreement," ECF No. 1-1) with Plaintiff as a condition of his employment, which laid out "certain non-solicitation obligations" by which he had to abide while employed by Plaintiff and, should his employment with Plaintiff end, for an additional two years thereafter (the "Restricted Period"). (*Id.* ¶¶ 6, 32–33, 36–37.) On March 16, 2022, while still employed by Plaintiff, Musuka formed and incorporated Musuka Group in New Jersey, an insurance company that is a "direct competitor" of Plaintiff. (*Id.* ¶¶ 7–8, 48.) Musuka then "began soliciting THG-NJ's clients to move their business from THG-NJ to Musuka Group," and he continued to do so after he resigned from THG-NJ in May 2022. (*Id.* ¶¶ 9, 52.)

Around August 2022, Plaintiff learned that Musuka had been in contact with Plaintiff's clients, including to instruct some of them to cancel their insurance coverage with Plaintiff by intentionally failing to pay premiums. (*Id.* ¶¶ 54–55.) Plaintiff's counsel sent Musuka a cease-and-desist letter demanding that he comply with the Agreement and identify all of Plaintiff's clients that Musuka had contacted regarding insurance products and services since his resignation. (*Id.* ¶¶ 57–58.) On September 7, 2022, Musuka's counsel replied with a letter indicating that Musuka was not violating the Agreement, and attached a "non-solicitation certification" from one of Plaintiff's clients, Client A, stating that Client A moved his business to Musuka after he himself had "initiated contact" with Musuka to do so. (*Id.* ¶¶ 59–60.) The letter indicated that Musuka would "continue to comply" with his obligations under the Agreement going forward. (*Id.* ¶ 62.)

However, Plaintiff later learned that Musuka continued to engage in allegedly prohibited activities with several other of its clients that Musuka had serviced while employed by Plaintiff, including: providing competitive services to Client B, (*id.* ¶ 67); converting Client C and Client

3

D's insurance policies to Musuka Group, (*id.* ¶¶ 69–70); competing directly with Plaintiff for Client E's account, (*id.* ¶ 71); altering and falsifying documents concerning THG-NJ insurance policies held by Clients F and G, (*id.* ¶¶ 85–118); misrepresenting the status of a THG-NJ insurance policy for Client H, resulting in a lapse in coverage, (*id.* ¶¶ 119–37); and "soliciting and/or providing 'Competitive Services'" to at least 44 other THG-NJ clients, (*id.* ¶ 72). The FAC alleges that Musuka's solicitation continued even after commencement of this lawsuit, (*id.* ¶¶ 75–78), and that Musuka targeted THG-NJ employees in addition to clients. (*Id.* ¶ 74.)

## II.  JURISDICTION

The Court has diversity jurisdiction over the claims herein pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation

4

omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   DISCUSSION

Defendant moves to dismiss the FAC in its entirety based on Rule 12(b)(6). The Court will consider each count in turn.

### A.   Breach of Contract (Count I)

To establish a claim for breach of contract, a plaintiff must show: "(1) a contract [existed] between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Defendants only dispute—so the Court will only address—the sufficiency of Plaintiff's allegations pertaining to the element of breach.[4]

The parties agree that New Jersey applies a "plain language" approach to contract interpretation in the absence of ambiguity, but disagree on what the plain language of their Agreement indicates. Defendants insist that the Agreement's plain language clearly indicates that

---

[4] Defendants argue in their Reply Brief for the first time that the Agreement is not enforceable and that, "as a matter of law, the Court should find that there was no mutual assent concerning the purported restrictions" of the Agreement. (Reply Br. at 3–4.) Not only does that argument advocate for a legal determination by the Court that is premature at this stage of the litigation, but it was raised too late in Defendants' briefing, depriving Plaintiff of the chance to respond. Accordingly, the Court declines to address it. *See, e.g.*, *Judge v. United States*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015) (a moving party may not raise new issues in its reply brief that it should have raised in its initial brief).

5

Defendants breached it "only if they engaged in 'solicitation.'" (Moving Br. at 5.) Defendants offer several "non-solicitation certifications" from various of Plaintiff's clients, each stating that Musuka "did not solicit" their business because he did not "initiate[] contact" with them. (DiChiara Decl., Ex. A.) However, in deciding a motion to dismiss, the Court may only consider documents outside of the operative complaint that are "integral to or explicitly relied upon in the complaint"; critical to that inquiry is "whether the claims in the complaint are 'based' on [the] extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Here, the FAC merely references the certifications as part of its portrayal of the timeline of events at large; the FAC is not "based on" the certifications, nor are the certifications "integral" to the FAC. To the extent that Defendants seek to introduce them as evidence to contradict the allegations against them, this is a matter for summary judgment, not a motion to dismiss. The Court therefore will not consider them as part of this motion.[5] Plaintiff also argues that the Agreement's plain language imposes "several independent obligations" on Defendants, just one of which prohibits solicitation. (Opp'n Br. at 12–13 (relying on grammar and referencing the repeated use of the disjunctive word "or").)

Having reviewed the Agreement, the Court finds that the Agreement unambiguously supports Plaintiff's position; its plain language prohibits several different activities, including not just "solicit[ing] to provide . . . Competitive Services,"[6] but also actually "sell[ing] or provid[ing] Competitive Services" to any of Plaintiff's clients during the Restricted Period, as well as "induc[ing] the termination, cancellation or non-renewal" of any of Plaintiff's business

---

[5] Even if it were appropriate for the Court to consider the certifications, they support Plaintiff's allegations of breach because they squarely admit that Musuka provided competing services to Plaintiff's clients and diverted Plaintiff's business in so doing.

[6] The Agreement defines Competitive Services as "any insurance or employee benefit service that competes, or is reasonably anticipated to compete, in the same markets with a product or service of the [Plaintiff], which Employee or [Plaintiff] has sold, marketed, distributed or developed in the last two years of Employee's employment with . . . [Plaintiff], or about which Employee has acquired Confidential Information." (Agreement, section 12.)

relationships.[7] (Agreement, section 2.1.)  Therefore, the Court rejects Defendants' argument that Musuka can only have breached the Agreement if he "solicited" clients.  *See Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958–59 (N.J. 2014) ("If the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect.") (internal quotation marks omitted).  The Court finds that the FAC adequately alleges that Musuka breached the Agreement by, *inter alia*, providing services to Plaintiff's clients in direct competition with Plaintiff and inducing the termination of Plaintiff's business with its clients during the Restricted Period.  (*See, e.g.*, FAC ¶¶ 55, 67–69, 72.)  The Court further finds, though it need not, that the FAC adequately alleges that Musuka did in fact solicit clients.[8]  (*See, e.g.*, FAC ¶¶ 51, 53–54 ("THG-NJ received information that Musuka *was contacting his former THG-NJ clients* in an effort [to] divert their business.") (emphasis added), ¶¶ 67–70 (alleging Musuka "*actively solicit[ed]*" clients by converting or planning to convert their business) (emphasis added).)

For the reasons stated above, the Court will deny Defendants' Motion to Dismiss with respect to Count I.

### B. Tortious Interference with Contract or Prospective Economic Advantage

The FAC alleges two counts of tortious interference: Count II claims that all Defendants—*i.e.*, both Musuka and Musuka Group—tortiously interfered with Plaintiff's actual and prospective contractual relations with its clients; and Count V claims that Musuka Group tortiously interfered

---

[7] Defendants' reading of Section 2.1 of the Agreement inexplicably ignores the various disjunctive clauses following the prohibition on solicitation.

[8] The Agreement does not define the term "solicit."  However, given that the sufficiency of Plaintiff's Count I allegations does not depend on solicitation in particular, the Court need not address how New Jersey courts define solicitation.  In any event, to the extent "solicitation" requires some "affirmative act" on the part of Musuka, as Defendants argue it does, the FAC paragraphs cited herein allege that Musuka did affirmatively contact some of Plaintiff's former clients.

with the Confidentiality and Non-Solicitation Agreement between Plaintiff and Musuka, which Musuka eventually breached. A tortious interference claim requires a plaintiff to show:

> (1) that it had an existing contract or reasonable expectation of economic benefit or advantage; (2) that the defendant knew of the contract or expectancy; (3) that the defendant wrongfully interfered with that contract or expectancy; (4) that it is reasonably probable that the loss of the contract or prospective economic gain was a result of the interference; and (5) that damages resulted from the interference.

*Freedom Funding Grp., Inc. v. Freedom Fundinggroup L.L.C.*, Civ. No. 20-18404, 2022 WL 3681281, at *15 (D.N.J. Aug. 25, 2022). The Court will consider each tortious interference count in turn.

### 1. Tortious Interference Against All Defendants (Count II)

As an initial matter, Defendants suggest that Plaintiff cannot maintain a tortious interference claim against Musuka because he "is a party to the contract" at issue and cannot interfere with his own contract. (Moving Br. at 7.) The Court rejects this argument because, as Plaintiff explains, the only tortious interference claim against Musuka in the FAC, Count II, alleges not that Musuka interfered with his own Agreement with Plaintiff, but instead that he interfered with Plaintiff's contractual relations and prospective business relationships with its clients. (*See* FAC ¶¶ 150–57; Opp'n Br. at 20–21.)

Defendants additionally argue that the Court "need not address the elements of tortious interference" because the Agreement bars only solicitation, which did not occur here, and so the tortious interference claim fails.[9] (Moving Br. at 7.) In response, Plaintiff points out that its interference allegations in Count II are not limited to solicitation, but also include Defendants'

---

[9] It is unclear which claim (Count II or Count V) Defendants reference when they assert that "this claim fails" because there was a lack of solicitation. (*See* Moving Br. at 7.) It is also unclear if Defendants posit this argument against Count II's tortious interference with contract claim, or its accompanying tortious interference with prospective economic advantage claim.

inducement of Plaintiff's clients to cancel their existing coverage with THG-NJ, as well as their "provision of competitive services" to Plaintiff's clients. (Opp'n Br. at 21.) Having reviewed the FAC, the Court finds that Count II explicitly alleges interference by inducing Plaintiff's clients "to refrain from engaging in new and/or continued business with [Plaintiff]." (FAC ¶ 154.) Moreover, even if the Agreement's prohibitions were limited to solicitation—which, for the reasons stated previously, they are not—it would be premature at this stage of the litigation to dismiss a tortious interference claim simply because the underlying contract does not expressly bar the conduct at issue[10]; rather, the appropriate inquiry is whether the elements of the claim are sufficiently pled. The Court finds that they are, so it will deny the Motion to Dismiss with respect to Count II.

### 2. Tortious Interference Against Musuka Group (Count V)

Defendants raise the same arguments for dismissal of Count V that they raise for Count II.

Count V differs insofar as it alleges that Musuka Group intentionally induced Musuka to breach the Agreement by soliciting Plaintiff's clients and employees. (FAC ¶ 177.) As set forth above, the Agreement prohibits such solicitations, and Defendants' certifications to the contrary cannot serve as a basis to dismiss the claim. In sum, the Court will deny Defendants' Motion with respect to both claims of tortious interference that are alleged in the FAC: Counts II and V.

### C. Unjust Enrichment (Count III)

To plead unjust enrichment, a plaintiff must allege: (1) that the defendant received a benefit, (2) at the plaintiff's expense, and (3) under "circumstances that would make it unjust for [the] defendant to retain [the] benefit without paying for it." *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. 2011). Defendants argue that Plaintiff's unjust enrichment claim should be dismissed because "Defendants did not engage in solicitation." (Moving Br. at 8.)

---

[10] In support of their argument for dismissal of Count II, Defendants rely on *Matrix Essentials, Inc. v. Cosm. Gallery, Inc.*, 870 F. Supp. 1237, 1247 (D.N.J. 1994). In that case, contrary to the instant litigation, the Court was rendering judgment after the parties had completed discovery and a bench trial.

Plaintiff counters that the FAC plausibly pleads the elements of unjust enrichment, of which solicitation is not one. (Opp'n Br. at 22–24.) Plaintiff maintains that, as alleged in the FAC, Musuka received financial benefit from providing insurance coverage to Plaintiff's clients, including by converting some of those accounts; such benefit was incurred at Plaintiff's expense; and the circumstances are unjust because that benefit was obtained from actions Musuka took in violation of the Agreement. (*Id.* at 23.)

The Court rejects Defendants' argument, implicit in which is that Plaintiff's unjust enrichment claim depends on sufficient allegations of solicitation. To the contrary, solicitation is not an element of the claim; all that is required to survive a motion to dismiss is a sufficient showing of some benefit that Defendants obtained at Plaintiff's expense—here, business with Plaintiff's clients—under circumstances that would make it unjust for Defendant to retain that benefit without paying for it. The Court will therefore deny the Motion to Dismiss with respect to Count III.

### D.     Breach of the Duty of Loyalty (Count IV)

To state a claim for breach of a fiduciary duty, such as the duty of loyalty, a plaintiff must allege that: "(1) the defendant had a duty to the plaintiff, (2) the duty was breached, (3) injury to plaintiff occurred as a result of the breach, and (4) the defendant caused that injury." *Diaz v. Bank of N.Y.*, Civ. No. 15-1954, 2016 WL 111420, at *4 (D.N.J. Jan. 11, 2016).

Defendants argue, in a footnote, that Count IV should be dismissed because it is "based on Defendants' alleged solicitation of clients" and, as Defendants asserted for the other counts, Defendants did not solicit clients.[11] (Moving Br. at 8 n.2.) Plaintiff responds by pointing out that

---

[11] Defendants do not explicitly state a lack of solicitation as the reason here; rather they write: "For reasons asserted herein, the duty of loyalty claim that is based on alleged solicitation should similarly be dismissed." (Moving Br. at 8.) The Court construes "reasons asserted herein" as a reference to Defendants' prior, extensive arguments that they did not engage in solicitation.

Defendants failed to address the FAC's allegations for this claim.  (Opp'n Br. at 24–25.)  Plaintiff adds that Count IV has nothing to do with solicitation anyway; rather, it is based on Defendants' falsification of client documents and creation, followed by nondisclosure, of a conflict of interest by representing Plaintiff's clients.  (*Id.* at 25.)

As a procedural matter, the Court first finds that Defendants have waived any argument regarding the sufficiency of Count IV's allegations by apprising the Court of it only "in passing" with a footnote.  *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").  On the merits, even if the Court were to consider Defendants' argument, their two sentences relying solely on solicitation, which is neither an element nor dispositive of a claim for breach of the duty of loyalty, fail to show that Count IV is insufficiently pled.  The Court will therefore deny Defendants' Motion to Dismiss with respect to Count IV.

## V.     CONCLUSION

For the reasons outlined above, Defendants' Motion to Dismiss will be DENIED.  An appropriate Order will follow.

Date: April 4, 2024

s/ Zahid N. Quraishi<br>
**ZAHID N. QURAISHI**<br>
**UNITED STATES DISTRICT JUDGE**

11